## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHYLENE A. MARSHALL** | : | **CIVIL ACTION** |
| *Plaintiff/Appellant* | : | |
| | : | **NO. 22-0010** |
| **v.** | : | |
| | : | |
| **YASIR A. ABDOUN** | : | |
| *Defendant/Appellee* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                        MARCH 20, 2023

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a bankruptcy appeal that stems from an adversary proceeding commenced by Appellant Kathylene A. Marshall ("Debtor") to avoid a pre-petition tax sale of her home (the "Property") located in Philadelphia, Pennsylvania, pursuant to 11 U.S.C. § 548.  In this matter, Debtor also seeks to recover damages under Pennsylvania's Fair Credit Extension Uniformity Act (the "FCEUA"), 73 Pa. Cons. Stat. § 2270.1 *et seq.*, through Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Cons. Stat. § 201-9.2, for actual costs and emotional distress caused by the wrongful attempt by the purchaser of the Property, Yasir Abdoun ("Appellee" or "Abdoun"), to obtain possession of the Property.  By Orders and Opinions dated February 11, 2020, and December 21, 2021, the Bankruptcy Court found that the pre-petition tax sale could not be avoided under 11 U.S.C. § 548 and awarded Debtor actual damages under the UTPCPL on account of Abdoun's unlawful actions in attempting to dispossess Debtor of the Property.

### ISSUES RAISED ON APPEAL

In this appeal, Debtor raises the following issues:

1.  Must the Bankruptcy Court entirely disallow Abdoun's proof of claim because the deed underlying the claim is a nullity derived from a state court decree itself void *ab initio* under applicable state law?

2.  In the context of ruling on Debtor's claim objection and evaluating Debtor's § 548(a)(1)(B)(i)(I) claim, was the *Rooker-Feldman* doctrine inapplicable and a non-obstacle to the Bankruptcy Court determining the deed underlying Abdoun's claim to be a nullity based on a void *ab initio* state-court decree?

3.  When the tax sale price paid by Abdoun in exchange for the Property lacks conclusive force under § 548, pursuant to the United States Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), is the fair market value of the Property the proper standard against which to measure whether Debtor received reasonably equivalent value for the Property?

4.  Does 73 Pa. Cons. Stat. § 201-9.2 permit the Bankruptcy Court to award emotional distress damages when it expressly permits a court to "provide such additional relief as it deems necessary or proper" in addition to authorizing "actual damages" and "attorney fees"?

5.  Did the Bankruptcy Court misconstrue Federal Rules of Bankruptcy Procedure 7054 and 7015 when it failed to award Debtor damages for emotional distress, even though the facts found by the Bankruptcy Court establish a cause of action for intentional infliction of emotional distress and the record was devoid of any suggestion Abdoun would have been prejudiced by the amendment of Debtor's pleadings to include a claim based on that tort?

The issues have been briefed, and the matter is ripe for consideration.  For the reasons set forth herein, Debtor's appeal is denied, and the judgment of the Bankruptcy Court is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

On March 31, 1997, Debtor and her now-estranged husband, Raymond Marshall ("Husband"), became owners of the Property, which is located at 715 Cobbs Creek Parkway, Philadelphia, Pennsylvania, as tenants by the entirety.  In 2011, after years of physical and mental abuse at the hands of her Husband, Debtor had her Husband permanently and forcibly removed from the Property.  Although Debtor believed that her Husband had agreed to pay the real estate taxes on the Property, Husband failed to do so for several years.

Based on delinquent real estate taxes against the Property totaling $9,777.13, the City of Philadelphia (the "City") in 2014 filed a petition in state court for a rule to show cause seeking authorization to sell the Property in order to collect.  The tax information certificate attached to the City's petition reflected that the City had assessed the value of the Property at $76,400.  On July 28, 2014, the state court issued a rule returnable granting the City's petition to show cause why a decree should not be entered permitting the sale of the Property.  Less than six months later, the state court issued a decree permitting the Property to be sold without holding a hearing, as required by Pennsylvania's Municipal Claims and Tax Lien Act (the "MCTLA"), 53 Pa. Cons. Stat. § 7283(a).

On February 18, 2015, the City sold the Property at a sheriff's sale to Abdoun, the winning bidder, for $29,000.  Around the time of the sale, Debtor's liabilities totaled between $70,000 and $80,000, and her assets, other than the Property, constituted $5,000 worth of personal property.

In March 2015, prior to the acknowledgment of the sheriff's deed, Abdoun visited the Property with his friend and a few police officers when Debtor was not home.  Debtor's minor son (the "Son") let the officers and Abdoun in, and the officers gave the Son "a piece of paper to give

---

[1]     These facts, which are undisputed, are taken from the Bankruptcy Court Opinions and the Stipulation of Facts submitted jointly by the parties to the Bankruptcy Court.

to [his] mother" that reflected that the Property had been sold at a sheriff's sale.  The officers left shortly thereafter.  Meanwhile, Abdoun gave the Son his business card and told him that the Property had been sold and that he and his mother would have to leave.

After the Son called Debtor and told her what had happened, she came home and ordered Abdoun and his friend, who were still standing outside, to leave because she was unaware that the Property had been sold.  Having her Son call her to tell her that a stranger was claiming to own her home made Debtor feel physically ill and brought back the anxiety and fear she used to experience when her abusive Husband still lived at the Property.

Shortly after Abdoun's first visit, Debtor went to the Philadelphia Sheriff's Office and learned that the Property had been sold.  Thereafter, she started working with Philadelphia Legal Assistance, a federally funded legal services program providing free legal services to low-income individuals in Philadelphia, to protect her interest in the Property.

On March 27, 2015, the Sheriff of Philadelphia County acknowledged a deed for the Property to Abdoun, and on April 8, 2015, the deed to the Property was recorded.  The state and city transfer tax certifications accompanying the recorded deed reflected that the Property's "fair market value" at the time of the sale was $76,400.

On April 9, 2015, Abdoun sent Debtor two identical letters demanding rent even though Debtor had never entered into a lease with Abdoun and had never agreed to pay him rent.  The rent demand allegedly left her scared, overwhelmed, upset, and anxious because she had been trying to make ends meet and could not afford to pay rent.

In June or July of 2015, Abdoun returned to the Property and called the police when he saw the Son and his friend sitting on the front step.  Abdoun suggested to the three or four police officers who arrived at the Property that Debtor and her Son were squatters on the Property.  When

the police came to the front door to speak to Debtor, the officers became hostile, accused Debtor of breaking into the Property, and ordered her to leave. To prove that she was not a squatter, Debtor showed the police photo identification and several bills in her name. After demonstrating that she resided at the Property, the police left.

The encounter between Debtor and the police took place outdoors on the front step of the Property, where her neighbors, bystanders in the community park across the street, and patrons of a nearby bar could see and hear. Debtor claims that having the police at her Property humiliated her, reminding her of the many humiliating public encounters with the police she experienced in previous years due to her abusive Husband's behavior.

For approximately six months after the police encounter, Debtor experienced intense fear that Abdoun would return with the police and force her to leave. In fact, she rarely left the Property for fear that the police would lock her out when she was not home. Due to her fear and anxiety, she became impatient, constantly felt "overanxious," struggled to concentrate and sleep, and cried frequently. Her Son observed that she had "a weight on he [sic] back" as she spent many nights after the police encounter crying on the phone to her friends.

On December 14, 2015, Debtor, through counsel, filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On January 5, 2016, Debtor filed her schedules, which identified Abdoun as a secured creditor. On January 14, 2016, Debtor filed her Chapter 13 plan, which provided that, over a five-year period, "[t]he debtor will pay 100% of the allowed secured claim directly to Mr. Abdoun."

On April 3, 2016, Abdoun filed a proof of claim in the amount of $45,552.11 as a secured claim on the basis that "Debtor lives in Claiments [sic] property" ("Original Proof of Claim"). The $45,552.11 amount consisted of the $29,000 purchase price, $2,900 in interest, $11,200 of "rent"

from February 17, 2015 through January 4, 2016, $593 for homeowner's insurance, $1,059.11 for 2016 real estate taxes, and $800 for water.  In the Original Proof of Claim, Abdoun averred that his claim was secured and perfected by his ownership interest in the Property and that the value of the Property was $250,000.  The Original Proof of Claim, however, did not include any attachments evidencing Abdoun's ownership interest or the Property's sale.

On June 14, 2016, Abdoun sent Debtor another letter demanding $800 "for June 2016 rent." After receiving the letter, Debtor "cried and prayed and cried and prayed" and believed that she would become homeless because she could not afford the rent demanded by Abdoun.  She thought that the bankruptcy would protect her from Abdoun's rent demands.  She became even more emotional and upset when, after she received the letter, her Son dropped out of school to get a job so that they would not become homeless.

On March 27, 2017, Debtor initiated the instant adversary proceeding by filing a complaint against Abdoun seeking to avoid the transfer of the Property in its entirety as a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B)(i)–(ii)(I), and to recover the Property pursuant to 11 U.S.C. § 550(a)(1).  In addition, Debtor sought to recover damages for alleged violations of the FCEUA as enforced through the UTPCPL.  Alternatively, Debtor sought to have the Bankruptcy Court disallow Abdoun's claim in its entirety on the basis that his Original Proof of Claim contained "no support for an allowed secured claim in any amount" pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2)(D)(i).  In the event Abdoun's claim was not disallowed in its entirety, Debtor sought to have the Bankruptcy Court set the redemption amount at $19,000— the alleged value of the Property, according to Debtor, as of the petition date—and reclassify any excess amount of Abdoun's claim as a general unsecured claim pursuant to 11 U.S.C. § 506(a).

On April 16, 2019, the day before the trial in the adversary proceeding, Abdoun filed an amended proof of claim (the "Amended Proof of Claim") in the same amount as the Original Proof of Claim but clarifying that his claim was based on the "sheriff's sale."  In the Amended Proof of Claim, Abdoun averred that his claim was secured and perfected by the "sheriff's deed" and that the value of the Property was $29,000.  Again, the Amended Proof of Claim did not include any attachments evidencing Abdoun's ownership interest or the sale of the Property.

At trial the next day, Debtor raised an unpleaded claim against Abdoun based upon his alleged willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1) by demanding post-petition rent for June 2016.  Although Abdoun argued that his demand for the June rent did not violate the automatic stay, he did not specifically object to Debtor trying this claim, nor did he object to evidence offered in support of such claim.  Abdoun later clarified that "we're only today saying we're only entitled on the—on the proof of claim $29,000" and clarified that he had no objection to capping his entire pre-petition claim at $29,000.  Accordingly, the Bankruptcy Court determined that Abdoun's "pre-petition secured claim is at most the $29,000 he paid at the—at the tax sale" because the parties agreed that any amount reflected in the Amended Proof of Claim in excess of $29,000 would be disallowed.

Debtor testified that, as a result of Abdoun's visits to the Property, she incurred costs taking public transportation to go to the Philadelphia Sheriff's Office to obtain proof of the sale and to meet with her counsel from Philadelphia Legal Assistance after both of Abdoun's visits.  She also paid to obtain a copy of her original deed and incurred travel costs associated with ordering and picking up her deed.  She further testified that, after receiving the rent letters from Abdoun in April 2015 and June 2016, she had to pay to take public transportation to meet with her counsel from

Philadelphia Legal Assistance to discuss the letters. Debtor testified that these costs totaled approximately $200.

### The Bankruptcy Court Opinions

On February 11, 2020, after a bench trial, the Bankruptcy Court judge entered an order finding that the pre-petition tax sale could not be avoided under 11 U.S.C. § 548 and awarding Debtor actual damages under the UTPCPL on account of Abdoun's unlawful actions in attempting to dispossess her from the Property. The Bankruptcy Court concluded that, with regard to Debtor's § 548 claim, the transfer of the Property was not constructively fraudulent because Debtor had failed to demonstrate that the purchase price was not reasonably equivalent to "the price that would have been received if the foreclosure sale had proceeded according to law." *Marshall v. Abdoun* (*In re Marshall I*), 613 B.R. 194, 207 (Bankr. E.D. Pa. 2020) (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 (1994)). The Bankruptcy Court also found that Abdoun violated the FCEUA by attempting to collect rent and taking nonjudicial action to try to remove Debtor from the Property prior to the expiration of the redemption period while Debtor had the right to exclusive possession of the Property, and, therefore, he was liable for damages under the UTPCPL. *Id.* Further, concluding that the UTPCPL does not allow plaintiffs to recover damages for emotional distress, the Bankruptcy Court limited Debtor's damages to her actual pecuniary losses resulting from such violations, which totaled $200, and one-and-a-half times the actual damages, bringing Debtor's total recovery on account of Abdoun's FCEUA violations to $300. *Id.* Finally, the Bankruptcy Court set the redemption amount and Abdoun's secured claim at $28,700, offsetting the $29,000 purchase price by the $300 in damages awarded to Debtor. *Id.* at 208.

On December 21, 2021, the Bankruptcy Court denied Debtor's motion for reconsideration, in which Debtor raised several issues. *Marshall v. Abdoun* (*In re Marshall II*), 636 B.R. 396, 416

(Bankr. E.D. Pa. 2021).  Specifically, the Bankruptcy Court:  (1) rejected Debtor's attempt to nullify the deed underlying the tax foreclosure sale, holding that the argument was precluded by the *Rooker-Feldman* doctrine; (2) rejected Debtor's argument that reasonably equivalent value for Debtor's § 548 claim should have been measured by the Property's fair market value; (3) rejected Debtor's argument that the UTPCPL allowed for emotional distress damages; and (4) disallowed recovery of damages for an unpleaded state-law claim of intentional infliction of emotional distress.  *Id.*

**JURISDICTION AND STANDARD OF REVIEW**

This Court has appellate jurisdiction over the Bankruptcy Court's final judgment pursuant to 28 U.S.C. § 158(a)(1).  Where a district court reviews a decision of the bankruptcy court on questions of fact, the court applies a clearly erroneous standard of review.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).  Under the clearly erroneous standard of review, the bankruptcy court's findings of fact must stand unless "the court is left with the definite and firm conviction that a mistake has been committed."  *Brager v. Blum*, 49 B.R. 626, 629 (E.D. Pa. 1985).  However, "the 'clearly erroneous standard' does not apply to questions of law.  Thus, where the appellate question presented is solely one of law, no presumption of correctness applies. The bankruptcy judge's legal conclusions may not be approved without [the district court's] independent determination of the legal questions."  *In re Gilchrist Co.*, 410 F. Supp. 1070, 1074 (E.D. Pa. 1976) (citations omitted); *see also Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–03 (3d Cir. 1981).  Therefore, the bankruptcy court's conclusions of law are subject to plenary review.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Kimmelman v. Port Auth.*, 344 F.3d 311, 316 (3d Cir. 2003).  Here, Debtor's appeal is primarily based on the

Bankruptcy Court's conclusions of law, and, therefore, her arguments are subject to plenary review.

**DISCUSSION**

As noted, Debtor argues that the Bankruptcy Court erred in concluding that: the *Rooker-Feldman* doctrine precluded the Bankruptcy Court from determining that the decree is void and the deed based on it a nullity; Debtor received reasonably equivalent value in exchange for the Property; Debtor was not entitled to recover emotional distress damages for her UTPCPL claim; and that Debtor could not pursue an unpleaded claim for intentional infliction of emotional distress asserted for the first time post-judgment. Each of these arguments is addressed below.

### Debtor's Challenges to the Validity of Abdoun's Secured Claim and the Void **Ab** Initio *Exception to the* **Rooker-Feldman** *Doctrine*

In the amended complaint, Debtor sought to avoid Abdoun's claim on the basis that the deed underlying Abdoun's secured claim was invalid. In denying this claim, the Bankruptcy Court held that the *Rooker-Feldman* doctrine deprived it of subject-matter jurisdiction. *In re Marshall II*, 636 B.R. at 412. This Court finds no error in the Bankruptcy Court's determination.

"The *Rooker-Feldman* doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." *Knapper v. Bankers Trust Co.* (*In re Knapper*), 407 F.3d 573, 580 (3d Cir. 2005) (citations omitted). A claim filed in federal court is barred by this doctrine under two circumstances:

> [F]irst, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker-Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

*Id.* A federal claim is "inextricably intertwined" with the state-court adjudication if:

> (1) the federal court must determine that the state court judgment
> was erroneously entered in order to grant the requested relief, or (2)
> the federal court must take an action that would negate the state
> court's judgment . . . .   In other words, *Rooker-Feldman* does not
> allow a plaintiff to seek relief that, if granted, would prevent a state
> court from enforcing its orders.

*Id.* at 581 (citation omitted).  The *Rooker-Feldman* doctrine applies when:

> (1) the federal plaintiff lost in state court; (2) the plaintiff
> "complain[s] of injuries caused by [the] state-court judgments"; (3)
> those judgments were rendered before the federal suit was filed; and
> (4) the plaintiff is inviting the district court to review and reject the
> state judgments.

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citation

omitted).

Here, Debtor seeks to avoid Abdoun's secured claim by effectively invalidating the state-

court judgment and resultant deed underling the claim.  Debtor argues that the judgment is void

because the state court lacked subject-matter jurisdiction when it entered the judgment on account

of the state court's failure to hold a requisite hearing before issuing a decree permitting the Property

to be sold.  In support of her argument, Debtor relies upon the so-called void *ab initio* exception

to the *Rooker-Feldman* doctrine espoused by the United States Court of Appeals for the Third

Circuit (the "Third Circuit") in *James v. Draper* (*In re James*), 940 F.2d 46 (3d Cir. 1991).  Debtor

argues that this exception allows a bankruptcy court to find a creditor's secured claim invalid

where that secured claim is based on a judgment entered by a state court without jurisdiction to do

so.  For the same reasons set forth in the Bankruptcy Court's decision, this Court finds that this

argument lacks merit.

In *James*, the Third Circuit referenced, though did not find applicable, an exception to the

*Rooker-Feldman* doctrine.  *In re James*, 940 F.2d at 52.  There, the court wrote:

There appears to be only one exception to this hard and fast rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity and thus void *ab initio*. A federal bankruptcy court may intervene only when the state proceedings are void *ab initio*; it lacks the power where it simply disagrees with the result obtained in an otherwise valid proceeding.

The distinction between a void judgment and one that is erroneously decided is crucial:

> A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed.

*Id.* (internal citations omitted). The Third Circuit went on to hold that the exception did not apply.

*Id.*

Since raising the void *ab initio* exception in *James*, the Third Circuit has called its existence into question in both published and unpublished decisions. For example, in *Knapper*, a debtor in bankruptcy court sought to void two default foreclosure judgments and the resulting sheriff's sale of two parcels of real property. 407 F.3d at 575. The debtor argued that the state-court default judgments were void because the state court lacked personal jurisdiction over her on account of the bank's failure to properly serve her with the complaints. *Id.* at 578. The Third Circuit held that the *Rooker-Feldman* doctrine deprived the bankruptcy court of subject-matter jurisdiction to adjudicate the debtor's personal jurisdiction challenge to the underlying state-court judgments. *Id.* at 581. In reaching its conclusion, the Third Circuit rejected the application of the void *ab initio* recognized in *James*, referring to the exception as dicta:

> In *In Re: James*, 940 F.2d 46 (3d Cir. 1991), a state court judgment at issue was void because it violated the automatic stay and therefore subject matter jurisdiction was lacking. Here there was no violation of the automatic stay or other problem with the subject matter of the Pennsylvania judgment. As a result, *the dicta discussion of Rooker-*

> *Feldman* in *James* in the context of a void *ab initio* exception is not
> applicable.

*Id.* at 581 n.16 (emphasis added) (citations omitted).

More recently, in *Todd v. United States Bank National Association*, 685 F. App'x 103 (3d

Cir. 2017), a panel of the Third Circuit again rejected application of the void *ab initio* exception

espoused in *James*.  The *Todd* panel wrote:

> While in dictum we have observed that vacating a state court
> judgment that is void as a matter of state law may "not intrude upon
> the notion of mutual respect in federal-state interests," we have not
> so held, and even the single Ninth Circuit case to which we cited for
> that proposition did not involve an exception to *Rooker Feldman*,
> but rather, rested on the conclusion that the bankruptcy court had
> exclusive jurisdiction of the matter.   The exception Plaintiffs
> propose thus lacks support and would appear to require exactly the
> sort of "review and rejection" of state court judgments that the
> *Rooker-Feldman* doctrine was designed to avoid.

*Id.* at 106 (internal citations omitted).

Based on these Third Circuit decisions, which post-date the Third Circuit's reference to the

void *ab initio* exception in *James*, this Court agrees with the Bankruptcy Court that no such

exception exists.  *See also Citizens & N. Bank v. Monroe Heights Dev. Corp.* (*In re Monroe

Heights*), 2017 WL 3701857, at *8 (Bankr. W.D. 2017) (relying on *Knapper* and *Todd* to conclude

that there is no void *ab initio* exception in this Circuit).  As such, under the *Rooker-Feldman*

doctrine, the Bankruptcy Court lacked subject-matter jurisdiction to invalidate the state-court

judgment underlying Abdoun's secured claim.[2]

---

[2]     Debtor's alternative argument that the relief she seeks — by way of avoidance of Abdoun's secured
claim — does not require a federal court to review the merits of the state-court judgment is equally
foreclosed by the *Rooker-Feldman* doctrine.  Debtor seeks to avoid Abdoun's secured claim by obtaining
a federal court's determination that the state-court judgment underlying the claim is void.  Such a
determination is precluded by the *Rooker-Feldman* doctrine.

*Debtor's "Federal Plaintiff" Argument*

Debtor next argues that the *Rooker-Feldman* doctrine is not implicated here where Debtor

is not a "federal plaintiff," but rather seeks adjudication of her objection to Abdoun's secured proof

of claim.  In support of this argument, Debtor draws from a "theory" described in a footnote in the

decision by the Honorable Eric Frank in *In re Razzi*, 533 B.R. 469 (Bankr. E.D. Pa. 2015).  In the

footnote, Judge Frank wrote:

> There is an even broader argument for the proposition that *Rooker-Feldman* is inapplicable in this contested matter.
>
> In *Exxon Mobil*, the Supreme Court emphasized that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  544 U.S. at 284, 125 S. Ct. 1517.
>
> A debtor who files an objection to a proof of claim ***may not fit*** the description of a state-court loser bringing a "case" in federal court requesting review and rejection of the state-court judgment. Certainly, the bankruptcy debtor has initiated a federal proceeding – at least in the vast majority of the filings, which are voluntary bankruptcy cases.  (And, a bankruptcy trustee who files a claims objection would not fit the description either).  Further, while a debtor (or bankruptcy trustee) is, in some sense, the moving party in the contested matter that arises from a claims objection, a claim objection can also be ***conceptualized*** as a defensive response to the affirmative demand for payment made through the filing of the proof of claim.  To the extent that the objector's request that a prior state-court judgment be disregarded is ***perceived*** as a defensive request for relief, *Rooker-Feldman* ***arguably*** is not implicated.
>
> ***I do not base my decision on this theory, but the theory is consistent with my conclusion.***

*In re Razzi*, 533 B.R. at 479 (emphasis added).

As is clear from the above quoted footnote, Judge Frank posited Debtor's current argument

with respect to the first element of the *Rooker-Feldman* doctrine, *i.e.*, the "federal plaintiff"

requirement, as an "arguable" theory.  Significantly, however, Judge Frank did not adopt or apply this theory.  As such, this theory is mere dicta.  Though Judge Frank concluded that the *Rooker-Feldman* doctrine was inapplicable to the debtor's objection to the creditor's proof of claim, he based this conclusion on his determination that the debtor's challenge to the proof of claim was premised on facts that preceded and were entirely independent of the entry of the state-court judgment.  *Id.* at 478–79.  Here, unlike the challenge at issue in *Razzi*, Debtor's challenge to Abdoun's proof of claim is premised on the validity of the state-court judgment, not on any facts or conduct that preceded the entry of the judgment.  In the absence of any persuasive caselaw adopting or applying Judge Frank's posited "theory" with respect to the first requisite of the *Rooker-Feldman* doctrine, this Court declines to adopt and apply it here.

### Debtor's §§ 548 and 550 Arguments

Debtor next argues that the *Rooker-Feldman* doctrine does not prohibit a bankruptcy court from voiding a state-court judgment when evaluating a debtor's fraudulent transfer and/or violation of the automatic stay claims.  Debtor's argument is misplaced.  Debtor's cited cases stand for the proposition that a bankruptcy court has jurisdiction to adjudicate a debtor's §§ 548 and 550 claims even where they involve a conveyance of the debtor's property by way of a state-court judgment.  Here, the bankruptcy court fully adjudicated Debtor's avoidance claims under §§ 548 and 550.  It did not find them precluded by the *Rooker-Feldman* doctrine.  Moreover, none of Debtor's cited cases permitted the bankruptcy court to invalidate the underlying state court judgments.

### Reasonably Equivalent Value

In her adversary complaint, Debtor asserted an avoidance claim under 11 U.S.C. § 548(a)(1)(B)(i)(I), seeking to avoid the transfer of the Property in its entirety as a constructively

fraudulent transfer.  In its decision, the Bankruptcy Court found that Debtor had established all but the final requirement for such a claim, *i.e.*, receipt of less than reasonably equivalent value for the Property.[3]  Relying on the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Bankruptcy Court defined "reasonably equivalent value" in the context of a tax foreclosure sale that had not followed applicable state law procedures, as the value that would have been bid for the property had a hypothetical foreclosure sale been held following proper application of state law.  Applying this definition, the Bankruptcy Court concluded that Debtor had not met her burden of demonstrating that she received less than reasonably equivalent value for the Property.  Debtor challenges the Bankruptcy Court's interpretation and application of *BFP* to her avoidance claim, arguing that the applicable standard for determining reasonably equivalent value where there has been a defect in the state foreclosure proceeding is to compare the value actually received against the *fair market value* of the property.   This Court finds this argument unpersuasive.

---

[3]     Section 548(a) provides, in relevant part:

> (a)(1) the trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1)(B)(i)–(ii)(I).  Chapter 13 debtors have standing to avoid transfers in place of the Chapter 13 trustee pursuant to 11 U.S.C. § 522(h) in the event the debtor could have exempted property if the trustee had successfully prosecuted the avoidance action so long as (1) the transfer was not voluntary, (2) the transfer was not concealed, (3) the trustee did not attempt to avoid the transfer, (4) the debtor seeks the avoidance pursuant to §§ 544, 545,  547,  548,  549, or 724(a) of the Bankruptcy Code, and (5) the transferred property is of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer under one of the provisions of § 522(g).  *Ryker v. Current* (*In re Ryker*), 301 B.R. 156, 160, n.1 (D.N.J. 2003); *Atkins v. Gelt Props., LLC* (*In re Atkins*), 525 B.R. 594, 603 (Bankr. E.D. Pa. 2015); *In re Varquez*, 502 B.R. 186, 190 (Bankr. D.N.J. 2013).  Abdoun has not contested Debtor's standing in this proceeding.

As correctly described by the Bankruptcy Court, in *BFP*, the Supreme Court considered whether a non-collusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law could be set aside as a constructively fraudulent transfer under § 548 for having resulted in a sale price that was less than the property's reasonably equivalent value. *BFP*, 511 U.S. at 533.[4]  In considering this issue, the Supreme Court recognized that "[m]arket value cannot be the criterion of equivalence in the foreclosure-sale context . . . .  [P]roperty that *must* be sold within those strictures is simply *worth less*.  No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques."  *BFP*, 511 U.S. at 538–39 (emphasis in original).  Recognizing the diminished actual value of properties sold in foreclosure, the Supreme Court held:

> [W]e decline to read the phrase 'reasonably equivalent value' . . . to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' (whether calculated as a percentage of fair market value or otherwise).  We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, *so long as all the requirements of the State's foreclosure law have been complied with*.

*Id.* at 545–46 (emphasis added).  With respect to foreclosure sales of property where the state's foreclosure law has not been properly discharged, the Supreme Court stated:

> Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale *(which we think would be the price that would have been received if the foreclosure sale had proceeded according to law)*.

---

[4]     Though *BFP* involved a mortgage foreclosure sale rather than a tax foreclosure sale, Debtor does not challenge application of the *BFP* holdings to tax foreclosure sales in Pennsylvania.  *See Lord v. Neumann* (*In re Lord*), 179 B.R. 429 (Bankr. E.D. Pa. 1995); *Crespo v. Abijah Tafari Immanuel* (*In re Crespo*), 557 B.R. 353 (Bankr. E.D. Pa. 2016), *aff'd*, 2017 WL 1177186 (E.D. Pa. Mar. 30, 2017).

*Id.* at 545–46 (emphasis added).

Though arguably not necessary to the Supreme Court's holding, the highlighted language above provides the Supreme Court's express view of reasonably equivalent value where a foreclosure sale of property occurs despite legal irregularities. Even if it is dicta, this language is consistent with the Supreme Court's central holding that the reasonably equivalent value of a property sold through a foreclosure proceeding is the value actually obtained from the foreclosure sale. In light of the Supreme Court's clear language, this Court finds, as did the Bankruptcy Court, that the reasonably equivalent value of a property sold through a tax foreclosure sale in Pennsylvania is "the price that would have been received if the foreclosure sale had proceeded according to law." *Id.*; *see also Lindsay v. Beneficial Reinsurance Co.* (*In re Lindsay*), 59 F.3d 942, 948 (9th Cir. 1995) (interpreting *BFP* to hold that where there is an irregularity in foreclosure sale, the transfer can be avoided "if the price received was not reasonably equivalent to the price that would have been received if the foreclosure sale had proceeded according to law"); *Baker v. Nationstar Mortg., LLC* (*In re Baker*), 574 B.R. 184, 190–91 (Bankr. D. Idaho 2017) (stating that under *BFP*, where there is an irregularity in the foreclosure sale, to avoid the transfer, the debtor must show that the price received at the sale was not reasonably equivalent to "the price that would have been received if the foreclosure sale had proceeded according to law"); *Thorian v. Baro Enters., LLC* (*In re Thorian*), 387 B.R. 50, 62 (Bankr. D. Idaho 2008) (same).[5] As such, the Bankruptcy Court's holding in the case *sub judice* with respect to reasonably equivalent value is affirmed.

---

[5]     The cases Debtor cites in support of her interpretation of *BFP* are inapposite. In each of the cited cases, the bankruptcy court found *BFP* to be inapplicable because the underlying state foreclosure procedures, unlike those at issue here and in *BFP*, did not provide for competitive bidding. Notably, Debtor does not argue that *BFP* does not apply in this case. To the contrary, she acknowledges that it does, but she argues for a different interpretation of reasonably equivalent value than that applied by the Bankruptcy Court.

As found by the Bankruptcy Court, and not contested by Debtor, Debtor did not present any evidence that had the foreclosure sale proceeded according to state law that she or some other potential buyer would have bid an amount higher than that bid and paid by Abdoun.  In the absence of such evidence, Debtor cannot meet her burden on reasonably equivalent value under *BFP*.  *See Ankrah v. HSBC Bank USA, N.A.* (*In re Ankrah*), 602 B.R. 286, 291 (Bankr. D.N.J. 2019); *In re Thorian*, 387 B.R. at 65.

### *Emotional Distress Damages for FCEUA/UTPCPL Claim*

In the complaint, Debtor asserts a state-law claim for violation of the FCEUA. Pennsylvania's FCEUA prohibits debt collectors and creditors from engaging in unfair or deceptive acts or practices in connection with debt collection.  73 Pa. Cons. Stat. § 2270.2.  The FCEUA does not provide consumers with an independent private cause of action.  Rather, pursuant to § 2270.5(a), "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the . . . Unfair Trade Practices and Consumer Protection Law."  73 Pa. Cons. Stat. § 2270.5(a).  As such, consumers must enforce violations of the FCEUA using the remedial provision of the UTPCPL, 73 Pa. Cons. Stat. § 201-9.2.  *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015).  In its decision, the Bankruptcy Court found that Debtor had sustained her FCEUA claim but held that damages for emotional distress were not permitted under applicable law.  In this appeal, Debtor argues that the Bankruptcy Court erred by declining to award her emotional distress damages.

As noted, consumers must enforce violations of the FCEUA using the remedial provision of the UTPCPL.  That provision provides:

> Any person who . . . suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful . . . may bring a private action to recover actual damages or one hundred

> dollars ($100), whichever is greater.  The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), *and may provide such additional relief as it deems necessary or proper*.  The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Cons. Stat. § 201-9.2 (emphasis added).  Debtor argues that the highlighted language above allows courts to award damages for emotional distress.  As correctly observed by the Bankruptcy Court, however, a majority of bankruptcy and district courts in this Circuit have held otherwise. *In re Marshall I*, 613 B.R. at 219 (collecting cases).  This Court finds the reasoning of these decisions consistent with the plain import of the UTPCPL.[6]  Because the statute requires an ascertainable loss of money or property and limits recovery to "actual damages," Debtor is not entitled to recover damages for emotional distress.

### *Debtor's Unpleaded Intentional Infliction of Emotional Distress Claim*

Debtor also argues that the Bankruptcy Court erred when it rejected Debtor's invocation of Federal Rules of Bankruptcy Procedure 7054 and 7015 to award Debtor damages for a state common-law claim of intentional infliction of emotional distress that was not pleaded in Debtor's complaint.  Specifically, Debtor argues (1) that Rules 7054 and 7015 permit such an award where the facts found by the Bankruptcy Court after a bench trial established a claim for intentional infliction of emotional distress and (2) that Abdoun would suffer no prejudice from an amendment of Debtor's pleadings to include the tort after trial.

The Bankruptcy Court correctly concluded that Rules 7054 and 7015 do not authorize a court to provide the relief Debtor seeks.  Federal Rule of Civil Procedure 54(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7054, provides, "[a] default

---

[6]     A minority of cases cited by Debtor contain no analysis of the issue.  Moreover, most involved an award of damages for emotional distress under other statutes.  As such, this Court finds these cases unpersuasive.

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.

Every other final judgment should grant the relief to which each party is entitled, even if the party

has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).  Addressing the purpose of

Rule 54, the Third Circuit explained:

> [Rule 54(c)] was meant to protect a plaintiff from clumsy pleading, which, through technical oversight, might deprive it of a deserved recovery.  The rule's most common usage is when the amount of the award varies from the demand for relief.  The rule has also been used to allow for the award of attorney's fees and costs even though none was demanded, or for recovering interest on a claim as damages.  As the Advisory Committee explains, it makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both.  In other words, Rule 54(c) addresses and cures a limited formal problem.  It is not designed to allow plaintiffs to recover for claims they never alleged.

*USX Corp. v. Barnhart*, 395 F.3d 161, 165–66 (3d Cir. 2004) (citing 10 Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2664, at 183 (3d ed. 1998)).

In addition, the Third Circuit described the bounds of Rule 54(c) as follows:

> What a court may do [under Rule 54(c)] ultimately is limited by fundamental notions of due process and fair play.  *Sylvan Beach, Inc. v. Koch*, 140 F.2d 852, 861–862 (8th Cir. 1944).  Fed. R. Civ. P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings.  *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982).  Put another way, relief may be based on a theory of recovery only if that theory was presented in the pleadings or tried with the express or implied consent of the parties.  *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir. 1969).
>
> *When relief is based on a theory of recovery not raised in the pleadings, the requirements of Fed. R. Civ. P. 15(b) may come into play.  Cioffe*, 676 F.2d at 541.  Fed. R. Civ. P. 15(b) requires that unpled issues which are tried with the express or implied consent of the parties are to be treated as if they were raised in the pleadings.  The court shall permit the pleadings to be amended to conform to the evidence offered when the presentation of the merits of the

> action will be subserved and the opposing party will not thereby be
> prejudiced.

*Evans Prods. Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 923–24 (3d Cir. 1984) (emphasis added).

Debtor does not dispute that she did not plead or raise at any time prior to the entry of judgment a theory of recovery based on the tort of intentional infliction of emotional distress. As such, the Court must consider whether the parties consented to treat such cause of action as if it had been raised in the pleadings under Federal Rule of Civil Procedure 15(b). Under Rule 15(b), "the district court may . . . permit amendments to conform to the evidence only if an issue has been tried with the express or implied consent of the parties and the opposing party will not thereby be prejudiced." *Evans*, 736 F.2d at 924. Regarding the pivotal role played by consent, either express or implied, to a Rule 15(b) amendment, the Third Circuit has stated that "[i]f the issue . . . has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted *no matter when made*." *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (internal citation and quotation marks omitted). Determining whether an issue has been tried by implied consent depends upon "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." *Id.* (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994)) (internal quotation marks omitted). Importantly here, the Third Circuit has held that "an issue has not been tried by implied consent if evidence relevant to the new claim is also relevant to the claim originally pled, because the defendant does not have notice that the implied claim was being tried." *Id.* If evidence of a pleaded issue and an unpleaded issue overlaps, there is no implied consent absent a clear indication that the party using the evidence is attempting to raise a new issue. *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994). "The primary

consideration in determining whether leave to amend under Fed. R. Civ. P. 15(b) should be granted is prejudice to the opposing party." *Evans Prods.*, 736 F.2d at 924 (citation omitted). "The principal test for prejudice in such situations is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory." *Id.* (citation omitted).

Here, Debtor never raised her intention to seek recovery for an intentional infliction of emotional distress claim any time before the Bankruptcy Court's entry of judgment.[7]   It is clear from the record that Debtor alleged and pursued emotional distress damages *only* as a form of actual damages under the FCEUA as enforced by the UTPCPL, not under any theory grounded in common-law tort.   In addition, as acknowledged by Debtor, "[a]ll the evidence in support of the unpled theory . . . was identical to the evidence necessary to establish damages under the statutory theory that was pled." (Debtor's Br., ECF 14, at pp. 61–62).   In light of these circumstances and Debtor's acknowledgment, this Court finds that Debtor's unpleaded intentional infliction of emotional distress claim was not tried by implied consent.   Accordingly, this Court finds no error in the Bankruptcy Court's rejection of Debtor's unpleaded intentional infliction of emotional distress claim.   Accordingly, the Bankruptcy Court's decision is affirmed.

**CONCLUSION**

For the reasons set forth, the Bankruptcy Court's Orders and Opinions of February 11, 2020, and December 21, 2021, are affirmed.   An Order consistent with this Opinion shall follow.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[7]      Notably, Debtor did advise the Bankruptcy Court and Abdoun of her intent to pursue another claim—her § 362(k) claim—that had also not been pleaded in the complaint.   This stands in direct contrast to her unpleaded intentional infliction of emotional distress claim.